**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHRISTOPHER P. GARINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1075-PRW |
| | ) | |
| THE BURNHAM LAW FIRM, P.C., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court is Defendant Nelson, Bryan & Cross Law Firm's Motion to Dismiss Plaintiff's Petition (Dkt. 8). The Motion (Dkt. 8) is fully briefed and ripe for decision. For the reasons that follow, the Motion (Dkt. 8) is **GRANTED**.

### ***Background***

This is a legal malpractice claim arising out of Plaintiff's attempt to secure representation in the multidistrict litigation in the Northern District of Florida surrounding faulty combat earplugs the 3M Company provided the U.S. Military.[1] Plaintiff served in the U.S. Marine Corps from 2008 to 2016, when as part of his service in Afghanistan and later as a tactical training instructor, the Marine Corps issued him faulty 3M Combat Earplugs. The 3M Combat Earplugs were used in close proximity to small arms fire,

[1] *In re 3M Combat Arms Earplug Products Liability Litigation*, Case No. 19-MD-2885 (N.D. Fla.).

artillery, and firing tanks. Plaintiff alleges he suffers from significant hearing loss and tinnitus due to 3M's faulty earplugs. Because of this, at some point Plaintiff responded to digital marketing materials from Defendant Burnham Law concerning the MDL to discuss his potential eligibility for any ultimate settlement in the case. Plaintiff asserts that he submitted requisite claim forms to Defendant Burnham and completed an online client-attorney representation agreement, thereby establishing an attorney-client relationship with Defendant Burnham. On or about January 4, 2022, a paralegal working for Defendant Burnham emailed Plaintiff and said that Defendant Burnham was working with another law firm, Defendant Nelson, Bryan & Cross, on the 3M MDL.

Plaintiff's primary point of contact at Defendant Burnham was attorney Stephanie Randall, who departed Defendant Burnham at some point to work for Defendant Ascent Legal Group. Plaintiff chose to bring his business to Defendant Ascent to continue working with Ms. Randall.

By May or June of 2024, Plaintiff reached out to Defendant Ascent to check the status of his claim, but Defendant Ascent informed Plaintiff that the firm had no record of him as a client, and thus it submitted no claim on his behalf. He then contacted Defendants Burnham and Nelson, and he was again told that each firm did not record him as a client and had not submitted a claim on his behalf.

The MDL's final deadline to participate in the settlement was January 24, 2024.[2] Having missed his opportunity to participate in any settlement, Plaintiff brings this action

[2] *In re 3M*, Case No. 19-MD-2885, 2024 WL 4481058, at *1 (N.D. Fla. Feb. 26, 2024).

for malpractice and punitive damages against Defendants, alleging that each defendant firm represented him in the MDL.

***Standard of Review***

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[3] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[4] Additionally, the Court must "draw all reasonable inferences in favor of the non-moving party[.]"[5] While factual allegations are taken as true, a court need not accept mere legal conclusions.[6] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim.[7] In analyzing a 12(b)(6) motion, courts are permitted to consider documents attached to the complaint,

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[5] *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019) (citation omitted).

[6] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[7] *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

and can review "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[8]

Plaintiffs are not required to set forth a prima facie case in their complaint.[9] Plaintiffs are, however, required to set forth plausible claims, so in determining whether a claim is plausible, the elements of a prima facie case are helpful.[10]

***Analysis***

Defendant Nelson argues that Plaintiff has failed to state a claim against it. In his Complaint (Dkt. 1, Ex. 1), Plaintiff neither explicitly alleges he formed an attorney-client relationship with Defendant Nelson, nor does he allege he ever spoke to someone at Defendant Nelson prior to asking about his claim or that he sought representation from Defendant Nelson. Rather, Plaintiff recounts receiving an email from a paralegal at Defendant Burnham Law, who mentioned that Defendant Burnham worked with Defendant Nelson on the MDL. Based on this, Plaintiff alleges in conclusory fashion that all three Defendants, including Defendant Nelson, represented him in the 3M MDL. Given those facts, Plaintiff has failed to state a legal malpractice claim against Defendant Nelson.

Plaintiff must be able to prove he had an attorney-client relationship in order to recover in a legal malpractice action.[11] In Oklahoma, an attorney-client relationship rests

---

[8] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation marks omitted) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[9] *Khalik*, 671 F.3d at 1192.

[10] *Id.*; *see Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1054 (10th Cir. 2020); *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015).

[11] The elements of a legal malpractice claim in Oklahoma include "(1) the existence of an attorney-client relationship, (2) breach of a lawyer's duty to the client, (3) facts constituting

on contract, which can be implied from the conduct of the parties.[12] A client's "reasonable subjective belief" is sufficient to establish such a relationship.[13] Plaintiff argues that his Complaint (Dkt. 1, Ex. 1) alleges facts showing he had a reasonable belief that he formed an attorney-client relationship when the allegations in the Complaint (Dkt. 1, Ex. 1) are taken as a whole. In his Response (Dkt. 15), Plaintiff repackages his assertion from the Complaint (Dkt. 1, Ex. 1) that Defendant Burnham's alleged statement to Plaintiff that "Defendant[] Burnham Law was working with Defendant[] Nelson, Bryan & Cross on the 3M litigation[,]"[14] instead as a declaration from Defendant Burnham "that the Nelson Firm would also be involved in his representation and in taking care of his claim in the 3M mass tort litigation."[15] The Court finds that those allegations are of different kind. Plaintiff also argues that he sufficiently alleged that he formed an attorney-client relationship with Defendant Nelson by alleging that all Defendants breached duties owed to Plaintiff as both fiduciaries and based on the attorney-client relationship.

In sum, Plaintiff's alleged belief in an attorney-client relationship with Defendant Nelson is based on an email with a paralegal from a different law firm and a call he made

---

the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury or damage, and (5) but for the lawyer's conduct, the client would have succeeded in the action." *Pierce v. Gray,* Case No. CIV-25-662-R, 2025 WL 2858024, at *5 (W.D. Okla. Oct. 8, 2025) (citing *Manley v. Brown*, 989 P.2d 448, 452 (Okla. 1999)).

[12] *State ex rel. Oklahoma Bar Association v. Helton*, 394 P.3d 227 ¶ 21, n.14 (Okla. 2017) (citing *State ex rel. Oklahoma Bar Association v. Green*, 1997 OK 39 ¶ 19 (Okla. 1997)).

[13] *Id.* at ¶ 21.

[14] Compl. (Dkt. 1, Ex. 1) ¶ 22.

[15] Resp. (Dkt. 15), at 3.

sometime after receiving the email, when Defendant Nelson informed him he was not a client. The Complaint (Dkt. 1, Ex. 1) is devoid of any plausible allegation supporting the conclusion Plaintiff had a reasonable belief that he had entered into a contract with Defendant Nelson for legal services. Plaintiff's assertion that he formed a contractual relationship with Defendant Nelson is not plausible when it is supported only by an email from an unrelated paralegal when Plaintiff never spoke to anyone who worked for Defendant Nelson, never otherwise communicated with the firm, never provided any information to the firm, and was never acknowledged as a client. Accepting such allegations would dangerously expand the attorney-client relationship if passing mentions of other firms from third-party emails could form the bases of such relationships.

***Conclusion***

Accordingly, the Court **GRANTS** the Motion (Dkt. 8) and **DISMISSES** Plaintiff's claims against Defendant Nelson **WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 12th day of August 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE